KEITH H. RUTMAN (CSB #144175)
501 West Broadway Ste 1650
San Diego, California 92101-3541
Telephone: (619) 237-9072
Facsimile: (760) 454-4372
email: krutman@krutmanlaw.com

DON L. O'KULA (CSB #107649)
Stewart and O'kula
PO Box 395
Lake Arrowhead, CA 92352
Telephone: (909) 337-6483
email: dokula2@msn.com

Attorneys for Plaintiff
JEFF COOK

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA
(Hon. Jesus G. Bernal)

| | |
|---|---|
| JEFFREY MICHAEL COOK,<br><br>      Plaintiff,<br><br>v.<br><br>SAN BERNARDINO COUNTY<br>SHERIFFS DEPUTIES DOES 1-15,<br><br>      Defendants. | Case No. 5:18-cv-01436-JGB-SP<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL |

COMES NOW Plaintiff JEFFREY MICHAEL COOK, by and through his attorneys of record, and hereby alleges:

This lawsuit for money damages is brought pursuant to the provisions of 42 U.S.C. § 1983 due to violations by Defendants of Mr. COOK's constitutional rights under the Fourth Amendment to the U.S. Constitution.

## JURISDICTION

1. Federal jurisdiction is founded upon the existence of a federal question, the Civil Rights Act, 42 U.S.C. § 1983 and lies under 28 U.S.C. § 1331.

## VENUE

2. Venue in the Central District of California is proper because the injuries to Mr. COOK occurred herein and further because the Defendants are believed to reside

in said district.

**PARTIES**

3.   Plaintiff JEFFREY MICHAEL COOK (hereinafter "COOK") was at all material times mentioned herein was a resident of the City of Yucca Valley, County of San Bernardino, State of California.

4.   At all material times mentioned herein, Defendants SAN BERNARDINO SHERIFFS DEPUTIES ALEXANDER STUMBO, CHRIS JONES, CIPRIANO LOPEZ and DOES 4-15 (the "Defendant Officers") were duly constituted law enforcement officers employed by the San Bernardino County Sheriff's Department and are charged with administering and maintaining laws in the jurisdiction of San Bernardino County and State of California.  Thus, they were the agents, servants, and/or employees of San Bernardino County and in doing the acts herein alleged, were acting within the course and scope of their agency and/or employment, and with the permission, consent and authority of San Bernardino County.  The acts of the Defendant Officers were also done under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of California.  The Defendant Officers are sued individually and in their capacity as peace officers for San Bernardino County.

5.   The identity of Defendant DOES 4-15 is/are presently unknown to Plaintiff, who shall amend this Complaint to allege them when they become known.  See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir.1980); Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999); Dubner v. City and County of San Francisco, 266 F.3d 959, 965-966 (9th Cir. 2001).

6.   The administrative claims process required by, inter alia, California Government Code §§ 905, 905.2 and 945.4, need not be followed as a prerequisite to bringing suit as to the claims brought under 42 U.S.C. § 1983.  Patsy v. Board of Regents, 457 U.S. 496 (1982); Heath v. Cleary, 708 F.2d 1376, 1378 (9th Cir. 1983).

**GENERAL ALLEGATIONS**

7.   Mr. JEFF COOK is a gentleman of 66 years of age. He is married and lives with his wife Pamela in Yucca Valley. Over the years, he has held down jobs as, inter alia, a schoolteacher for the Los Angeles School District from 1997-2005, when he was forced to take a medical retirement due to heart problems. After a year as an electrician, he moved to Yucca Valley with his wife and mother (Ethel Cook) and bought several residential properties. The family utilized them as sober living facilities and women's shelters, with many, if not most, residents directed there by the Superior Court. Prior to August 2017, they ceased that endeavor and decide to rent their 3 properties on a commercial basis. One such property is located at 6385 Fortuna Avenue, Yucca Valley, CA 92284.

8.   This complaint stems from an incident that took place in the early morning hours of September 22, 2017 at the Fortuna Avenue address.

9.   On September 3, 2017, Mr. COOK's mother decided to rent the property to one Scott McCune, who provided Mrs. Cook with a $600 deposit until he could return to sign the lease and identify his proposed roommate(s) so formal background checks could be conducted. (An informal background check in the form of a telephone call to Mr. McCune's former landlord who vouched for his credit-worthiness.) Unfortunately, Mr. McCune was arrested for drug possession two days later, and never took occupancy, much less sign a lease. The Cooks contacted an identified reference named Ryan Wray and advised him that the deposit would remain in escrow and refunded upon Mr. McCune's release from custody.

10.  Apparently entering through an unlocked garage door and/or breaking through a back door, Scott McCune's associates, including one Desiree Guerrero, illegally occupied and took possession of the Fortuna Avenue residence. Neither Mr. COOK nor his mother realized this had occurred until they received a $400 water bill on or about September 15, 2017.

3

11.  Mr. COOK and his mother immediately went to the home and confronted what turned out to be a horde of heroin addicts, who threatened his life and his mother's. They contacted the Yucca Valley Police Department.

12.  On September 19, 2017, Mr. COOK watched at the Fortuna Avenue property while Yucca Valley Police Officers forcibly removed the squatters because they could not produce a lease allowing them to maintain occupancy of the residence. Mr. COOK advised them about the application and deposit from Mr. McCune at that time and explained how he had never actually signed a lease, just provided a deposit, which was held in escrow. In the process, they arrested one Matt Leonard on charges of possession of methamphetamine.

13.  In the early morning hours of September 20, 2017 (incident # YV172630077), the squatters returned to the Fortuna Avenue property. They kicked in the back door and vandalized the house, leaving the premises empty except for some possessions in the garage. The next morning, Mr. COOK learned about the vandalism, and he and his mother contacted the San Bernardino County Sheriff's Department and Deputies Eric Gonzalez (not sued herein) and CHRIS JONES responded. Ethel Cook asked for a drug sweep of the location. While the Deputies were there, Desiree Guerrero arrived and was contacted by the Deputy(ies). She blamed the drugs on her roommates. The Cooks reiterated that Desiree Guerrero was not an authorized tenant nor were any of her roommates authorized to live there. Mr. COOK's mother asked for patrols at night. She also told the Deputies that Mr. COOK would be spending the night at the Fortuna Avenue property to discourage more vandalism.

14.  In the afternoon of September 21, 2017 (incident # YV172640050), Mr. COOK was back at the Fortuna house and called the Sheriff's Department for assistance in disposing of drug paraphernalia he found in the home. Deputies Adrian Garcia (not sued herein), ALEXANDER STUMBO, and Armando Cantu (not sued herein) responded.

4

15.   On September 21, 2017 at 15:50 (incident # YV172640063), Desiree Guerrero called the Sheriffs' Department and ALEXANDER STUMBO was dispatched to respond.  She complained that she was being improperly evicted and claimed to have a copy of a rental agreement.  No action was apparently taken by Deputy STUMBO.

16.   On September 21, 2017 at 17:37 (incident # YV172640068), Mrs. Cook called the Sheriffs' Department to request patrols outside the house and once again ALEXANDER STUMBO was dispatched to respond.  He once more deemed the matter a civil one and left without taking any action.

17.   On September 21, 2017, Mr. COOK spent the night at the Fortuna house with his dog.  All the utilities were turned off and he went to sleep in the living room with a camping lantern for illumination.

18.   On September 21, 2017 at 23:26 hours (incident #s YV172640080 & YV172640081), Desiree Guerrero again called the Sheriffs' Department and reported she was being improperly evicted.  CHRIS JONES and CIPRIANO LOPEZ were dispatched to respond.

19.   Mr. COOK was awakened by noise outside, and he saw flashlights surrounding the house.  He opened the door and saw several Sheriff's Deputies.  Some of them maintained a perimeter, while the other 2 (JONES and LOPEZ) engaged with Mr. COOK.  He identified himself to JONES and LOPEZ by handing them his driver's license.  He explained his relationship to the owner of the property and the reason for his presence.  Defendant JONES went to his vehicle, returned 5 minutes later, and ordered Mr. COOK to step outside, leaving his dog inside. Mr. COOK complied.

20.   JONES began to conduct what can only be described as a hostile interrogation for the next ten minutes.  Mr. COOK asked for, but was refused, water or a chance to sit down even though he told the Deputies he takes heart medication that dehydrates him and cannot stay on his feet for very long because he suffers

from Congestive Heart Failure.

21. JONES demanded that Mr. COOK hand over the $600 deposit. JONES also said he had a copy of a lease which authorized the squatters to be there. (If that were true, why would the deposit be refundable?) This lease was purportedly signed by Mr. COOK, but he did not sign such a lease; the one that the officer had was a forgery. His mother never signed a lease either, only an application submitted by Scott McCune. Mr. COOK provided his mother's telephone phone number and explained that the deposit money was in the bank awaiting Mr. McCune's release. JONES called Mr. COOK's mother.

22. At approximately 2:15 a.m. JONES returned to Mr. COOK, who was standing in the driveway, ordered him to turn around and told him he would be handcuffed. Mr. COOK complied, but out of nowhere he was struck in the neck from behind. LOPEZ grabbed onto him, stomped on his left foot, resulting in a fracture, and shook him violently for about a minute.

23. JONES pulled Mr. COOK's hands up to the back of his head and dragged him about 200 feet to his patrol SUV, where he slammed. COOK's face first into the door, resulting in the breaking of 5 teeth.

24. JONES then turned Mr. COOK around and kneed him repeatedly in the groin. JONES opened the back door and threw Mr. COOK face first into the back seat. The wind being knocked out of him, he went into convulsions and fought to regain his breath, while the group of Deputies was laughing outside the vehicle.

25. After several minutes Mr. COOK asked for an ambulance, water and air. He was taken out of the vehicle, pushed against the roof, kneed in the groin and stomach, and thrown back in the back seat again. He continued to request air, water and medical attention. He was petrified.

26. He was pulled out of the vehicle again while JONES once more demanded that Mr. COOK disgorge $600. JONES also told Mr. COOK he would charge him with 5 felonies unless Mr. COOK admitted the squatters had a right to be there.

6

27.   After about a half hour, Mr. COOK's step father (Robert Demerle) came to the Fortuna Avenue property. Apparently, one of the Deputies had called Ethel Cook and told her only that there was something going on at the Fortuna Avenue property. Concerned that they had not heard from Mr. COOK, whom they knew to be staying overnight at the property, Mr. Demerle drove over. On arrival he encountered Mr. COOK bleeding from the mouth, disoriented and still handcuffed from behind in the back of the SUV. Mr. Demerle spoke with the Deputies, and confirmed the lease was a forgery and that Mr. COOK was innocent and demanded his release. Instead, Mr. COOK was once again forcibly taken out of the vehicle.

28.   JONES seized Mr. COOK's keys and cell phone, threatened him that "this is not over," threatened to shoot the dog and ordered him off his own property. Mr. COOK entered the house, got his dog and fled out the back door. He made his way to his mother's home a half mile away, passed out for a few hours, and was then driven by his wife to High Desert Medical Center. He was instead directed to Desert Medical Center in Palm Springs, where he was diagnosed with a concussion, cervical and head injuries, missing teeth and a badly sprained left wrist.



29.   He still suffers from mental anguish, the feeling that he can't breathe and the fear that the police will come to his home at any hour and beat him. He still suffers convulsions months later whenever he is tired or stressed. His neurologist advised him not to drive. Since the beating he has to frequently urinate at night, interrupting his sleep cycle. He has been diagnosed with depression.

30.   Over the 18 months preceding this incident, he had spent over $13,000 in dental

work.  As a result of the beating, he lost 5 teeth that had been capped, and advised that repairs would cost over $5,000.

31. His family finally evicted the squatters in January 2018, but not until they had done major damage:  load bearing beams were cut, windows broken, blood from heroin injections squirted all over the walls and electricity was pirated.

32. The squatters nevertheless returned on or about January 3 continued to vandalize the Fortuna Avenue Property.  The new tenants called Mr.  COOK in fear for their lives, and when he arrived, Desiree Guerrero beat him and stabbed him with a broom handle.

33. At no point in time did Mr. COOK act suspiciously, give elusive answers, obstruct or delay an officer in the performance of his official duties, disturb the peace, or refuse to cooperate in a manner which was not lawfully within his constitutional rights.  He did not strike, attempt to strike, resist, or take flight or commit any illegal acts or otherwise engage in conduct which in any way justified the actions of the Defendant Officers.

34. Mr. COOK's detention was unreasonably prolonged without any reasonable suspicion to do so.  Mr. COOK was arrested without any probable cause to believe he was subject to arrest.  No reasonable officer in the possession of the information known to  the Defendant Officers would have believed that Mr. COOK was subject to arrest or a prolonged detention.

35. Mr. COOK was subjected to excessive and unreasonable force in attempting to effectuate his detention and arrest, as there was no reason to use any force at all.

36. No reasonable officer in the possession of the information known to Defendants would have believed that they were entitled to cause such physical pain or injury in the course of an arrest.

///

///

///

8

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**UNREASONABLE SEIZURE (DETENTION/ARREST)**
**AGAINST ALL DEFENDANT OFFICERS**

37.   Plaintiff refers to and incorporates by reference Paragraphs 1 through 36 as though fully set forth herein.

38.   In committing the acts alleged herein, the Defendant Officers violated, without probable cause, reasonable suspicion, consent, exigent circumstances or other defense, Mr. COOK's clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure in her person from unreasonable government intrusion, including false arrest/unreasonable detention.  These rights were clearly established at the time.  For these reasons, Mr. COOK is entitled to seek damages pursuant to Title 42 U.S.C. §1983, et seq.

39.   A reasonably prudent officer would have known that Mr. COOK was not subject to arrest or a prolonged detention.

40.   By reason of the acts alleged above, Mr. COOK did sustain great emotional distress and shock and injury to his person and nervous system, all to his damages in an amount to be proven at trial.

41.   As a direct and proximate result of the acts and omissions alleged herein, Mr. COOK is entitled to general and special damages from the Defendant Officers in an amount to be proven at trial.

42.   In doing the acts alleged herein the Defendant Officers acted maliciously and with reckless and callous disregard for the rights and feelings of Mr. COOK and by reason thereof Mr. COOK demands exemplary and punitive damages in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**UNREASONABLE SEIZURE (EXCESSIVE FORCE)**
**AGAINST ALL DEFENDANT OFFICERS**

43.   Plaintiff refers to and incorporates by reference Paragraphs 1 through 36 as

9

1   though fully set forth herein.

2   44.   In committing the acts alleged herein, the Defendant Officers violated, without

3      any defense, Mr. COOK's clearly established constitutional right under the

4      Fourth Amendment to the United States Constitution to be secure in her person

5      from the use of unreasonable and excessive force, in that the force applied to

6      arrest/detain Mr. COOK was in contravention of constitutional and statutory

7      duty, was in excess of any force required to address the circumstances, was

8      grossly out of proportion to any need for force, was not employed in good faith,

9      and was intended and substantially certain to cause serious bodily injury.   These

10     rights were clearly established at the time.   For these reasons, Mr. COOK is

11     entitled to recover damages pursuant to Title 42 U.S.C. §1983, et seq.

12  45.   "[W]here there is no need for force, any force used is constitutionally

13     unreasonable." Headwaters Forest Def. v. County. of Humboldt, 240 F.3d 1185,

14     1199 (9th Cir.2000), vacated on other grounds, 534 U.S. 801 (2001).   A

15     reasonably prudent officer would have known that Mr. COOK was not subject to

16     any, let alone excessive, force.

17  46.   Handcuffing "substantially aggravates the intrusion and aggressiveness" of a

18     detention.   See U.S. v. Bautista, 684 F.2d 1286, 1289 (9th Cir.1982).

19  47.   By reason of the acts alleged above, Mr. COOK did sustain great emotional

20     distress and shock and injury to his person and nervous system, all to his

21     damages in an amount to be proven at trial.

22  48.   As a direct and proximate result of the acts and omissions alleged herein, Mr.

23     COOK is entitled to general and special damages from the Defendant Officers in

24     an amount to be proven at trial.

25  49.   In doing the acts alleged herein the Defendant Officers acted maliciously and

26     with reckless and callous disregard for the rights and feelings of Mr. COOK and

27     by reason thereof Mr. COOK demands exemplary and punitive damages in an

28     amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Defendant Officers as follows:

1.      For general and compensatory damages against the Defendant Officers in an amount to be proven at trial;

2.      For exemplary and punitive damages against the Defendant Officers in an amount to be proven at trial;

3.      For costs of suit herein, including reasonable attorneys fees pursuant to 42 U.S.C. § 1988; and

4.      For such other and further relief as the Court deems proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all claims for relief.

Respectfully Submitted,

Dated: September 26, 2018

s/ Keith H. Rutman
KEITH H. RUTMAN
Attorney for Plaintiff
Email: krutman@krutmanlaw.com

Dated: September 26, 2018

s/ Keith H. Rutman
DONALD L. O'KULA
Attorney for Plaintiff
Email: dokula2@msn.com